IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID STIEGLITZ<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, a municipal corporation; BATTALION CHIEF Daniel J. McDermott, in his individual capacity; LIEUTENANT Matthew Anderson, in his individual capacity.<br><br>    Defendant. | Case No.<br><br><br><br><br>Plaintiff Demands Trial By Jury |

## COMPLAINT

Plaintiff DAVID STIEGLITZ, by and through his undersigned attorneys, complains against Defendant CITY OF CHICAGO, a municipal corporation, BATTALION CHIEF Daniel J. McDermott, in his individual capacity; and LIEUTENANT Matthew Anderson, in his individual capacity, and states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action to redress violations of Title VII of the Civil Rights Act for sexual harassment/hostile work environment (Count I); violations of Title VII of the Civil Rights Act for retaliation, (Count II); violations of the Equal Protection Clause to the United States Constitution pursuant to 42 U.S.C. § 1983, (Count III); and violations of the Illinois Whistleblower Act, 740 ILCS 174/15 ("the Act") (Count IV).

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617, 42 U.S.C. § 1983, and 28 U.S.C. § 1343. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## PARTIES

4. Plaintiff DAVID STIEGLITZ ("Plaintiff" or "Stieglitz") is a citizen of the United States who resides in Cook County, Illinois.

5. Plaintiff has been employed by the City of Chicago since November 2005 at the Chicago Fire Department as a Firefighter/EMT.

6. Defendant CITY OF CHICAGO ("City" or "Chicago") is a municipal corporation organized under the laws of the State of Illinois and conducting business in the State of Illinois. Defendant City is a home rule unit of local government with the authority and purpose to promote the health, safety, and welfare of its inhabitants with essential governmental services through its various departments including the Chicago Fire Department.

7. The Fire Commissioner is the head of the Fire Department of the City of Chicago and is responsible for putting into effect and enforcing the rules, orders, policies, regulations, practices and procedures of the Fire Department. The Fire Commissioner is also responsible for the enforcement of rules, ordinances, and statutes within the Fire Department.

8. Defendant Daniel J. McDermott, is a Battalion Chief employed by the Chicago Fire Department. As a Battalion Chief, McDermott had supervisory authority over Plaintiff.

9. Defendant Matthew Anderson is a Lieutenant employed by the Chicago Fire Department. As a Lieutenant, Anderson had supervisory authority over Plaintiff.

10. Defendants directly oversaw or were actively involved in the discriminatory conduct.

11. Defendants acted under color of law.

## ADMINISTRATIVE PROCEEDINGS

12. On or about February 11, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment. On August 30, 2022, Plaintiff filed an amended charge alleging sexual harassment and retaliation.

13. On or about January 31, 2023, the EEOC posted a notice of right to sue on its public portal. On February 27, 2023, Plaintiff emailed the EEOC investigator to inform her that he had not received the notice of right to sue. The investigator responded on February 27, 2023 informing Plaintiff that the EEOC had not yet issued the notice of right to sue. Plaintiff did not receive a copy of the notice of right to sue until March 23, 2023.

14. Plaintiff has timely filed this complaint within 90 days of the receipt of the Notice of Right to Sue. Plaintiff has fulfilled all conditions precedent to the brining of this claim and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15. The Chicago Fire Department has a culture of sexual harassment and retaliation. In April 2021, the Inspector General released findings of an audit into the Fire Department's policies and found that the polices were "insufficient to meet the environmental challenges" posed by the departments "command and control service operations." The auditor also found that the CFD's complaint process placed employees at "risk of retaliation and potentially discouraged them from reporting misconduct." A recent nationwide survey of fire service employees found

3

that 80% of male participants and 87% of female participants have witnessed or experienced verbal harassment from a colleague.[1]

16. Since approximately October 2017, Plaintiff was stationed at Engine 86/Truck 57. Plaintiff chose this station because it is one block from his house.

17. From July 2020 through April 2021, Plaintiff was placed in a text message group chat with people at his firehouse and on his shift so that work related information could be exchanged. If Plaintiff were not part of the group chat, he would miss pertinent information about training opportunities and tests.

18. Plaintiff was not friends with the other members of the group chat and did not socialize with them outside work.

19. There were eight members of the group chat including Firefighter Kevin Henrichsen, Lieutenant Matthew Anderson, Firefighter/EMT Joe Forchione, Firefighter/EMT Mike Pagani, Firefighter Justin Martin, Engineer Kip Elliot, Lieutenant Gus Guerra, and Firefighter/EMT Mark Nickel.

20. There was a female paramedic assigned to the house and female paramedics that come in and out of the house on assignments, but no women were part of the group chat.

21. Anderson, Forchione, Pagani, and Nickel sent inappropriate sexual images – including pictures of their genitalia; sexually offensive, homophobic, and racist texts; and inappropriate gifs on the group chat on an almost daily basis.

22. Plaintiff complained to Lt. Anderson that he did not want to receive the inappropriate group chat messages. Lt. Anderson ignored Plaintiff's complaint and they continued to send the inappropriate messages to Plaintiff.

---

[1] https://www.jsonline.com/story/communities/lake-country/2023/02/21/sexual-harassment-common-in-fire-departments-local-research-shows/69925645007/ accessed April 28, 2023.

23. In the fall of 2020, Plaintiff's 17-year-old son visited him at the firehouse. Plaintiff, Mark Nickel, Mike Pagani, Joe Forchione, and Matthew Anderson were in the kitchen. Plaintiff heard a CFD employee speaking with his son but did not see who it was. Plaintiff's son was asked if he had a girlfriend. When he said, "no," Mike Pagani asked him, "Why, are you gay?" Plaintiff's son said, "no, I'm not gay." The CFD employee asked, "How do you know you're not gay. Have you ever sucked a dick before?" Plaintiff's son said, "no." Pagani asked, "Well, how do you know if you haven't sucked a dick before. Do you want to?" Plaintiff's son responded, "no." At that point, Plaintiff intervened and got his son out of the kitchen and sent him home.

24. Plaintiff also overheard Mark Nickel, Mike Pagani, Joe Forchione, Kevin Henrichsen, and Matthew Anderson frequently make jokes about a male paramedic's sexual orientation. They nicknamed the paramedic, BJ (as in blow-job), and called him "gay," and talked to Plaintiff about him being gay because he would color his hair and paint his fingernails. Anderson, Forchione, Pagani, and Nickel also refer to Kevin and other firefighters as "gay," on a regular basis.

25. Anderson, Forchione, Pagani, and Nickel would also talk about sex frequently in front of Plaintiff in the workplace. They would talk about wanting to have sex with female paramedics and talk about their physical attributes. They would comment on women on the TV, and say, "I bet she could suck a good dick." They would make this comment at least once or twice a day. They would also describe sexual encounters with their girlfriends or wives in vulgar and descriptive terms.

26. Plaintiff would spend his downtime at the firehouse doing laundry in the basement in order to avoid hearing the sexually offensive conversations.

27. Anderson, Forchione, Pagani, and Nickel only spoke in a sexually explicit manner around the male employees. They did not engage in sexually explicit talk when female CFD employees were at the house. When a female CFD employee was at the house, before roll call, Anderson would say to the male firefighters, "Aye, we have females here today, so watch your mouths."

28. Plaintiff also witnessed CFD employees engage in sexually inappropriate conversations while on emergency calls where they were supposed to be helping the public in a professional manner. In December 2020 while on an emergency call, Anderson told Plaintiff to check out the body of a woman who was the girlfriend of a patient that they were supposed to be helping. Plaintiff also heard CFD employee's discussing the physical attributes of female patients that they had given chest compressions to in a fatal shooting.

29. Defendants' conduct substantially interfered with the work performance of Plaintiff and created an intimidating, hostile or offensive work environment.

30. Plaintiff complained to Chief McDermott about the sexually offensive culture. Plaintiff asked McDermott to file charges against the CFD employees involved for sexual harassment. McDermott did not take any corrective action to remedy Plaintiff's complaints.

31. Plaintiff's supervisors not only condoned the sexual harassment and turned a blind eye to Plaintiff's complaints but participated in it as well. Two Lieutenants were a part of the group chat. Chief Daniel McDermott made jokes with the CFD employees, such as "I'm Irish, so I'm not as well hung as some of you guys.

32. Defendant was aware of Plaintiff's protected conduct. On July 29, 2021, Plaintiff filed a complaint of harassment with the City of Chicago Department of Human Resources Diversity and Equal Employment Opportunity Division.

33. After Plaintiff complained about sexual harassment, he was ostracized by his co-workers, threatened with discipline for reporting illegal behavior, brought up on false internal review charges, the station cook spit on his plate at dinner, he had doors slammed in his face, and he was transferred from his assigned house.

34. Plaintiff's Captain questioned him about what he had spoken to IAD about and what agencies he had called. Chief McDermott stated to the employees at roll call, "someone doesn't like what we are doing now so let's follow the rules. And we may have to follow some different rules and lift this person from the house."

35. In February 2022, Chief McDermott threatened Plaintiff that he would leave him down in a fire.

36. On February 19, 2022, Chief McDermott accused Plaintiff of being afraid to go into fires. The Chief accused Plaintiff of having problems everywhere he goes and that he was trouble and always looking to sue someone. The Chief also said that he did not want people like Plaintiff in his battalion and would try to get him fired.

37. On February 19, 2022, Lt. Anderson brought false allegations against Plaintiff for allegedly making comments to Joe Forchione of a "provoking nature to disrupt harmony in the firehouse." The charges were investigated and unfounded.

38. On February 25, 2022, Plaintiff complained to the City of Chicago Office of Inspector General that he was being retaliated against.

39. On February 28, 2022, Plaintiff was transferred out of the fire station. Plaintiff remained out of the station until February 11, 2023. Plaintiff was detailed out to a new firehouse everyday so that he never knew where he was going to work until the day before. Often his assignments were the furthest stations from his house.

40. On April 11, 2022, a firefighter told Plaintiff that in February, a CFD employee called the station that Plaintiff was re-assigned to and told them to watch out for Plaintiff because he was trouble and would report the people he worked with.

41. On May 20, 2022, Lieutenant McCormick told Plaintiff that he had a name throughout the entire city as a troublemaker. On May 29, 2022, Lieutenant Kilpatrick told Plaintiff that he needed to put in for a new firehouse because the City would not let him go back to his firehouse.

42. On June 10, 2022, Chief McCormick brought false allegations against Plaintiff alleging that on February 25, 2022, he caused physical violence against Forchione by striking him with his elbow. The charges were investigated and unfounded.

43. In October 2022, Plaintiff complained that a male firefighter had posed for a nude picture at the firehouse and made the photograph into a shower curtain, which he hung at the fire station. Plaintiff also reported that there were playboy magazines being kept at the firehouse.

44. On November 1, 2022, Plaintiff was told by Chief McCormick that he heard he had reported the shower curtain. Chief McCormick stated that he was not allowed to complain about sexual harassment issues outside of the firehouse and that he would be disciplined if he did for going outside of the chain of command.

45. On March 16, 2023, on an emergency call, Pagani was speaking with a CFD retiree about his days at the firehouse and told him, "We got an asshole here that needs his ass kicked." Pagani looked at Plaintiff as he said it. Lt. Anderson heard Pagani's statement and all he did was laugh.

46. On March 27, 2023, Plaintiff was presented with a memorandum from Chief McDermott alleging false allegations accusing him of dereliction of duty in a tragic fire on March 7, 2023.

47. Plaintiff informed Assistant Commissioner Paul Cogswell, Chief of the Internal Affairs Division for CFD, EEO Investigator Michael Beverly, and District Chief Robert Jurewicz that the allegations against him were false and made in retaliation for his complaints of protected conduct.

48. Similarly situated employees who were not known to have engaged in protected conduct were treated more favorably under similar circumstances.

49. Defendants' adverse actions against Plaintiff closely followed his participation in protected activity within such a period of time as to raise an inference of retaliatory motivation.

50. Defendants know that employment decisions cannot be made in retaliation for the employee reporting what he reasonably believed to be discrimination.

51. Plaintiff repeatedly complained about harassment and retaliation to supervisors and command staff to no avail.

52. By failing to investigate Plaintiff's complaints in a timely manner and issue consequential discipline to the perpetrators of harassment, Defendants have condoned harassment and retaliation against Plaintiff.

53. Because of the nature of firefighters' work and the danger they face in performing their jobs, it is important that they have the trust, support, and backup of their co-workers, crew members, peers and supervisors.

54. Although CFD may have adopted written policies that purport to prohibit sexual harassment, the reality is that firefighters are at the mercy of their co-workers and their direct

reports while in the field. Firefighting can be a dangerous job and all firefighters need to rely upon the other CFD members for their safety. Any firefighter that steps out of line in this environment can be putting his life at risk. Firefighters are reticent to complain in this environment, for fear of retaliation which may not only impact their employment but also their lives.

55. The CFD is a paramilitary organization. Firefighters are expected to report directly through their chain of command. It is pervasive and long-standing practice at CFD for firefighters to face undo criticism and discipline if they go outside the direct chain of command with concerns. This practice creates a substantial dampening effect on a firefighter's complaints of harassment and retaliation.

56. CFD policy makers knew that firefighters are intimidated by these long-standing and pervasive practices which prevents them from bringing claims of discrimination and harassment out of fear of retribution and retaliation within their ranks.

57. The CFD's policy makers had actual and constructive knowledge of these practices, but failed to take reasonable steps to alleviate them.

58. Additionally, CFD is liable for the sexual harassment and retaliation Plaintiff experienced because it was deliberately indifferent to the rights of Plaintiff and those similarly situated to be free from sexual harassment and retaliation.

59. The CFD policy makers have failed to train, supervise, or discipline those that engage in violations of harassment and retaliation laws. The CFD did not treat those claims seriously and even when a member was guilty, he or she would receive no discipline or just a mild reprimand which sent a message to others that it doesn't matter if you complain.

60. CFD has failed to properly train, supervise and discipline its officers in the area of sexual harassment. There has been a widespread, systemic practice that sexual harassment is so common that it is to be buried or undermined so no CFD Officer suffers any serious harm or consequence even when it is uncovered. This creates a deliberate indifference to the rights of the harassed and a pervasive pattern and practice allowing sexual harassment to permeate the department.

61. This lack of training, supervision and discipline has fostered in the ranks of the CFD a climate and belief that even when an individual's rights are violated, they should not report it, look the other way, and maintain a code of silence.

62. Defendants' conduct is ongoing.

## COUNT I

### (Title VII – Hostile Work Environment Sexual Harassment
### v. City of Chicago)

63. Plaintiff repeats and realleges the foregoing paragraphs against Defendant City of Chicago as though fully set out herein.

64. Title VII prohibits discrimination on the basis of sex in regards to the terms, privileges and conditions of employment. 42 U.S.C. § 2000e-2 (a).

65. Plaintiff was an "employee" of CFD as defined by Title VII. 42 U.S.C. § 2000e(f).

66. CFD was Plaintiff's "employer" as defined by Title VII 42 U.S.C. § 2000e(b).

67. CFD subjected Plaintiff to a hostile and abusive work environment based upon his sex. Female employees were not subjected to the same sexually offensive group chats, images, and conversations as Plaintiff was as a male.

68. The actions taken against Plaintiff were severe and pervasive which negatively altered the terms and conditions of Plaintiff's employment at CFD creating an abusive and hostile work environment.

69. The actions of Defendant as perpetrated by its agents and as described and complained of above, were unwelcome conduct of a sexual nature, that constitutes sexual harassment which explicitly or implicitly affects Plaintiff's employment, unreasonably interferes with Plaintiff's work performance, or creates an intimidating, hostile, or offensive work environment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq.

70. CFD knew about the hostile work environment Plaintiff was experiencing and failed to take appropriate and timely action to prevent or correct the unlawful and discriminatory work environment.

71. CFD discriminated against Plaintiff when it failed to take appropriate action after it knew or reasonably should have known of the hostile work environment Plaintiff was experiencing.

72. CFD's violation of Title VII, was intentional, willful, wanton, malicious and oppressive to justify an award of punitive damages in addition to compensatory damages.

73. As a direct and proximate result of CFD's actions and omissions, Plaintiff has sustained severe emotional distress, lost wages, the value of lost benefits and other consequential damages.

74. The actions of Defendants creating a hostile work environment against Plaintiff have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional

pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. Compensatory damages in an amount to be determined at trial;

B. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

C. A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII;

D. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

E. An award of reasonable attorneys' fees, costs, and litigation expenses; and

F. Such other relief as the Court may deem just or equitable.

## COUNT II

### (Title VII – Retaliation
### v. City of Chicago)

75. Plaintiff repeats and realleges the foregoing paragraphs against Defendant City of Chicago as though fully set out herein.

76. The actions of Defendant as perpetrated by their agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of retaliating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his complaints of sexual harassment hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq.

77. Defendant has engaged in a policy, pattern, and practice of retaliating against employees who complain of sexual harassment.

78. Defendant intentionally retaliated against Plaintiff because of his complaints by taking actions against Plaintiff which could dissuade a reasonable worker from making or supporting a charge of discrimination, including but not limited to: being subject to a hostile work environment, making false disciplinary charges against him, transferring him from his assigned station, and denying him employment opportunities.

79. The actions of Defendant in retaliating against Plaintiff have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress, caused by Defendant's conduct;

C. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring the Defendants to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e, et seq.;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT III

### (§ 1983 Violation of Equal Protection
### v. All Defendants)

80. Plaintiff repeats and realleges the foregoing paragraphs against all Defendants as though fully set out herein.

81. Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment that altered the terms and conditions of Plaintiff's employment.

82. The actions of Defendants against Plaintiff violate his equal protection right to be free from sexual harassment under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

83. The City is also liable to Plaintiff for violations of the Fourteenth Amendment of the United States Constitution because the City has adopted and promulgated an official policy of violate his equal protection right to be free from sexual harassment under the Fourteenth Amendment, and/or has created a widespread practice or custom of violating employee's equal protection rights to be free from sexual harassment, and/or the decisions to violate employee's equal protection rights to be free from sexual harassment was made by an official with final policy making authority.

84. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

85. The actions of Defendants in intentionally engaging in and condoning sexual harassment caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. Compensatory damages in an amount to be determined at trial;

B. A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C. A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E. Punitive damages as allowed by law against Defendants;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT IV

### (Violation of the Illinois Whistleblower Act v. All Defendants)

86. Plaintiff repeats and realleges the foregoing paragraphs against all Defendants as though fully set out herein.

87. An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

88. Plaintiff has been retaliated against because he disclosed to government agencies, including CFD EEO, the City of Chicago Inspector General, and the EEOC, the violations of a State or federal law, rule, or regulation.

89. City of Chicago policies and Title VII of the Civil Rights Act of 1964 prohibits discrimination, sexual harassment, and retaliation in employment. SEC. 2000e-2. The Illinois and United States Constitutions prohibit unequal treatment based on sex.

90. Plaintiff's report of CFD's violations of laws, rules, and regulations is protected conduct.

91. Plaintiff reasonably believed that CFD's actions of civil rights violations including harassment and retaliation were a violation of state or federal law, rule or regulation.

92. Defendants retaliated against Plaintiff because Plaintiff reported the potential violations of the state or federal laws, rules, or regulations set forth above.

93. Defendants retaliated against Plaintiff in violation of rights guaranteed to him by the Illinois Whistleblower Act.

94. Defendants knew that it was unlawful to retaliate against Plaintiff or any other employee in violation of the Act.

95. As a result of Defendants' retaliation, Plaintiff has suffered substantial losses, including, but not limited to, lost wages and benefits, mental and emotional anguish, embarrassment, humiliation, and damage to his reputation, and damage to his career.

**WHEREFORE,** Plaintiff prays for judgment against Defendants in an amount in excess of $75,000 and such other relief as the Court may deem just or equitable, including but not limited to compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, future pecuniary damages, punitive damages against the individual defendant as allowed by law, reasonable attorneys' fees, costs, litigation expenses as a result of Defendants' unlawful conduct, and award Plaintiff any and all other relief to which he may be entitled.

Respectfully submitted,

DAVID STIEGLITZ

*s/Heidi Karr Sleper*

One of Plaintiff's Attorneys

*Electronically filed on April 28, 2023*

Heidi Karr Sleper (#6287421)
Jacob D. Exline (#6326874)
KURTZ, SLEPER & EXLINE, LLC
610 W. Roosevelt Rd., Ste A2
Wheaton, IL 60187
Phone: 630-323-9444
E-mail: hsleper@kselegal.com
E-mail: jexline@kselegal.com