## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID STIEGLITZ,

        Plaintiff,

    v.

CITY OF CHICAGO, *et al.*,

        Defendants.

No. 23-cv-2696
Judge Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

Plaintiff David Stieglitz (Stieglitz) is a Firefighter/EMT with the Chicago Fire Department (CFD), who was subjected to a workplace where sexually inappropriate language as well as racist and homophobic comments were made by his coworkers.[1] Stieglitz complained to his superiors, Battalion Chief Daniel J. McDermott (McDermott) and Lieutenant Matthew Andersen[2] (Andersen), to no avail. Not only were his complaints ignored, but Stieglitz became the target of retaliatory conduct. Stieglitz sued Defendants City of Chicago (the City), McDermott, and Andersen asserting violations of Title VII of the Civil Rights Act for sexual harassment/hostile work environment, among other claims. *See generally* R.[3] 12, First Amended

---

[1]The Court accepts as true all the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Stieglitz. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[2]Andersen states in his Motion to Dismiss, R. 15 at 1 n.1, that his last name is spelled incorrectly in Plaintiff's First Amended Complaint as "Anderson." The correct spelling of "Andersen" is used herein.

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name and, where necessary, a page or paragraph citation.

Complaint (FAC).[4] The City and McDermott filed a joint motion to dismiss, and Andersen filed a separate motion to dismiss, both pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 15, Andersen Mot. Dismiss; R. 17, City Mot. Dismiss. For the following reasons, the motions are granted in part and denied in part.

## Background

Stieglitz has been employed by the City as a Firefighter/EMT since November 2005. SAC ¶ 5. In July 2020, he was added to a text message group chat with coworkers from his firehouse so that work related information could be exchanged. *Id.* ¶ 19. The other members of the group chat were not Stieglitz's friends and he did not socialize with them outside work. *Id.* ¶ 20. The chat excluded women and members regularly sent sexually explicit images, including pictures of their genitalia; homophobic and racist texts; and inappropriate gifs. *Id.* ¶¶ 22–23. Stieglitz complained to Andersen, his Lieutenant and supervisor, and told him that he did not want to receive these messages, but Andersen did not take any course of action to stop them. *Id.* ¶¶ 9, 24.

Stieglitz alleges that the workplace culture included frequent discussions of sex, jokes targeting others based on perceived sexual orientation, and commentary

---

[4]On July 1, 2025, the Court granted Stieglitz's motion for leave to amend his complaint, which added two additional claims for malicious prosecution and abuse of process, as well as added additional individual defendants related to those claims. R. 43. The Court found that the proposed Second Amended Complaint did not substantively amend Counts I–IV, which are the subject of the instant motions to dismiss, and therefore found that the pending motions to dismiss are applicable to the Second Amended Complaint, and considered them as Defendants' responsive pleadings to those counts of the Second Amended Complaint. The Court there cites to the Second Amended Complaint in this Order. R. 44, SAC.

about female patients and paramedics. SAC ¶¶ 25–30. Stieglitz also alleges that inappropriate conduct was directed at his minor son during a visit to the firehouse, during which he was asked about his sexual orientation. *Id.* ¶ 25. Stieglitz complained to McDermott, the Battalion Chief, about the sexually offensive culture, but McDermott did not take any action to address his complaints. *Id.* ¶¶ 8, 32.

After filing formal complaints with the City's Department of Human Resources Diversity and Equal Employment Opportunity Division (EEO Office) and the Office of Inspector General (OIG) in 2021 and 2022, Stieglitz maintains that he experienced retaliation, including ostracism, disciplinary threats, false allegations, involuntary transfers, and ultimately a retaliatory arrest. SAC ¶¶ 34–41, 47–51, 58–59.

Stieglitz sued the City, McDermott, and Andersen alleging violations of Title VII of the Civil Rights Act for sexual harassment/hostile work environment against the City (Count I); violations of Title VII of the Civil Rights Act for retaliation against the City, (Count II); violations of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C § 1983 against all Defendants, (Count III); and violations of the Illinois Whistleblower Act (IWA), 740 ILCS 174/15 against all Defendants (Count IV).[5] The City and McDermott filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). City Mot. Dismiss. Andersen separately filed a motion to dismiss Counts III and IV under

---

[5]As stated above, the Second Amended Complaint also alleges claims for malicious prosecution (Count V) and abuse of process (Count VI), but the Court stayed any responsive pleading on those Counts pending the Court's resolution of the pending motions to dismiss Counts I–IV. R. 43.

3

Rules 12(b)(1) and 12(b)(6).[6] Andersen Mot. Dismiss. The fully briefed motions are before the Court.

## Legal Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists.'" *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (quoting *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself

---

[6]Because the two motions to dismiss raise the same or similar bases for dismissal of each Count, the Court cites only to the City and McDermott's motion to dismiss (hereinafter referenced as the "City's motion") unless Andersen's motion raises a distinct basis for dismissal.

4

as to the existence of its power to hear the case." *Apex Digit.*, 572 F.3 at 444 (cleaned up).[7]

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Hallinan*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

"When a motion to dismiss is based on a lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first." *Rizzi v. Calumet City,* 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) (cleaned up). If the court dismisses the plaintiff's complaint for lack of subject matter jurisdiction, the accompanying Rule 12(b)(6) motion becomes moot and need not be addressed. *Id*.

---

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

## Analysis

Defendants move to dismiss the Counts I through IV on several bases. Because Defendants frame one of their arguments to dismiss Stieglitz's IWA claim as an argument raised under Rule 12(b)(1), the Court starts with Count IV.

### I. Count IV - Violations of the Illinois Whistleblower Act

In Count IV, Stieglitz asserts a claim under the IWA, alleging he was retaliated against for disclosing sexual harassment and workplace retaliation to various government entities, including the CFD's EEO Office, the City's OIG, and the EEOC. SAC ¶¶ 105, 109.

Defendants move to dismiss the IWA claim on two bases: (1) that it is preempted by the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq.* because the IHRA has sole jurisdiction over alleged workplace civil rights violations, under Rule 12(b)(1) and, in the alternative, (2) that it fails to state a claim under Rule 12(b)(6). R. 18, City. Memo. Dismiss at 8. The Court begins with Defendants' preemption argument.

#### A. Preemption

Defendants argue that Count IV must be dismissed because the Court "lacks subject matter jurisdiction as the Illinois Department of Human Rights has exclusive jurisdiction of alleged civil rights violations under Illinois law." City Memo. Dismiss at 8. The way Defendants see it, the claim is preempted because it is entirely premised on reports of sexual harassment and retaliation, matters exclusively

6

governed by the IHRA. *Id.* at 9 (citing *Alexander v. Ne. Ill. Univ.*, 586 F. Supp. 2d 905 (N.D. Ill. 2008)).

In response, Stieglitz contends, as a preliminary matter, that the motions to dismiss must be denied because they are procedurally improper. R. 28, Resp. City at 2. Preemption, notes Stieglitz, is an affirmative defense upon which the defendant bears the burden of proof. *Id.* (citing *Vaughan v. Biomat USA, Inc.*, 2022 WL 4329094, at *4 (N.D. Ill. 2022); *Williams v. City of Chi.*, 2022 WL 3716214, at *6 (N.D. Ill. 2022) (considering preemption under Rule 12(b)(6)). The proper mechanism for the resolution of an affirmative defense, asserts Stieglitz, is a motion for judgment on the pleadings under Rule 12(c), filed after the defendant files an answer. *Id.* Because Defendants did not follow proper procedure, Stieglitz reasons, the Court should deny the motions out-of-hand. *Id.* More substantively, he maintains that his claim is not preempted because the IHRA does not encompass his claim and his disclosures were made to external government agencies, extending beyond purely internal employment grievances. *Id.* at 2–3.

Defendants in reply do not directly respond to Stieglitz's argument that the proper vehicle to argue preemption is a Rule 12(c), not Rule 12(b)(1) motion. R. 35, Reply at 3–4. Instead, they cite to two district court cases that are twenty years old or more, and find the defendants' IHRA preemption arguments to be jurisdictional. *Id.* at 4 (citing *Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc.*, 2005 WL 43178, at *2 (N.D. Ill. Jan. 10, 2005) (dismissing IWA claim for lack of subject matter jurisdiction based on IHRA preemption); *Guy v. State of Ill.*, 958 F. Supp. 1300, 1312

7

(N.D. Ill. 1997) (dismissing intentional infliction of emotional distress claim as preempted by the IHRA, but only citing the Rule 12(b)(6) standard)). Defendants attempt to brush aside the cases cited by Stieglitz as "irrelevant" as they analyze Rule 12(b)(6) motions. *Id.*

The Court disagrees with Defendants that the cases cited by Stieglitz are "irrelevant." True, neither addresses preemption under the IHRA; but *Vaughan*, citing more recent Seventh Circuit precedent, states that "'[p]reemption . . . is an affirmative defense upon which the defendants bear the burden of proof,'" 2022 WL 4329094, at *4 (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)), and *Williams*, also citing recent Seventh Circuit law, states that, "[a] party seeking to dismiss a claim at the outset of a case based on an affirmative defense should first raise the defense in its answer and then move for judgment on the pleadings under Rule 12(c)." 2022 WL 3716214, at *6 (citing *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022)); *see also Mims v. Boeing Co.*, 2022 WL 2316199, at *3 (N.D. Ill. June 28, 2022) (IHRA preemption is an affirmative defense).

When district courts have considered preemption under Rule 12(b)(6), the Seventh Circuit has emphasized that dismissal at the pleading stage is appropriate only where the defense is apparent from the face of the complaint and leaves no room for factual development, in other words, where the plaintiff has "pleaded [themselves] out of court" such that "the difference between Rules 12(b)(6) and 12(c) [can] be disregarded." *Benson*, 944 F.3d at 645; *see also Doe v. GTE Corp.*, 347 F.3d 655, 657

(7th Cir. 2003) (same); *Doe v. La Magdalena II Inc.*, 585 F. Supp. 2d 984, 986 (N.D. Ill. 2008) (preemption "cannot be the basis to dismiss unless plaintiff has pled herself out of court."). Here, Defendants do not contend that this is the rare situation where the Court has "no doubt" that there is a valid preemption defense. *See Luna Vanegas*, 46 F.4th at 640. In short, Defendants' 12(b)(1) motions are the improper vehicle to assert the preemption affirmative defense.

Accordingly, the Court denies Defendants' motions to dismiss Stieglitz's IWA claim based on IHRA preemption under Rule 12(b)(1). The Court now turns to Defendants' arguments for dismissal of the IWA claim under Rule 12(b)(6).

### B. Sufficiency of Allegations

Alternatively, Defendants posit that Count IV should be dismissed because Stieglitz fails to plead the essential elements of an IWA claim. City. Memo. Dismiss at 10. The IWA bars employers from retaliating against employees who, among other things, alert government investigators to employer wrongdoing. *See generally* 740 ILCS 174/15. To adequately plead a violation of the IWA, a plaintiff must allege "(1) an adverse employment action by his . . . employer, (2) which was in retaliation (3) for [his] disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Sweeney v. City of Decatur*, 2017 WL 1101773, at *3 (Ill. App. Ct. 2017). The Court addresses Defendants' arguments as to each element in turn.

### 1. Adverse Employment Action

Defendants first contend that Stieglitz fails to plead any injury which rises to the level of a materially adverse action, that is, "one that significantly alters the terms and conditions of the employee's job." City Memo. Dismiss at 10 (quoting *Elue v. City of Chicago*, 2017 WL 2653082, at *5 (N.D. Ill. June 20, 2017)). From Defendants' perspective, Stieglitz's assertions of being ostracized, accused of dereliction of duty, and being subjected to rude comments are not actionable, as they constitute petty slights or minor annoyances. *Id.* at 11. Nor does his reassignment to a work location further from his residence rise to the level of a materially adverse employment action, submit Defendants. *Id.* Stieglitz disagrees, asserting that all that he is required to allege are adverse acts that would dissuade a reasonable employee from engaging in protected activity. Resp. City at 6 (citing, *inter alia, Harris v. City of Chicago,* 479 F. Supp. 3d 743, 751 (N.D. Ill. 2020)). And he has done so. The Court agrees with Stieglitz.

Under Seventh Circuit precedent, "[a]dverse employment actions . . . generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). The Supreme Court recently clarified that to establish

an adverse employment action under Title VII,[8] a plaintiff need only show "some harm" respecting an identifiable term or condition of employment, rather than a "significant" disadvantage. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024). The Court explained that plaintiffs are not required to show that the harm incurred was "significant[, o]r serious or substantial." *Id.* (citations omitted). In short, *Muldrow* established a more lenient "materially adverse" standard. *Arnold v. United Airlines, Inc.*, --- F.4th ----, 2025 WL 1778643, at *4 (7th Cir. June 27, 2025).

Here, applying the more generous standard of *Muldrow* and viewing the facts in the light most favorable to Stieglitz, the Court finds that Stieglitz has adequately alleged an adverse employment action under the IWA. Stieglitz's allegations fall into the third category of adverse employment actions, "unbearable changes in job conditions." Stieglitz alleges that after he disclosed the alleged misconduct, he was subjected to false accusations of wrongdoing, placed under an internal investigation, transferred from his assigned fire house, and ultimately arrested in retaliation. *See* SAC ¶¶ 34–41, 47–51, 58–59. So too as to Stieglitz's allegations relating to Andersen, as Stieglitz alleges that he was arrested in part based on statements from Andersen, after Andersen confronted him about not believing his version of events. *Id.* ¶¶ 57–

---

[8]As Stieglitz points out, courts interpreting IWA claims often look to Title VII's standard for an adverse employment action. Resp. City at 5 (citing *Williams v. City of Chicago*, 2022 WL 3716214, at *7 (N.D. Ill. Aug. 29, 2022) (to construe the IWA, the court found "it appropriate to rely upon federal case law interpreting Title VII's anti-retaliation provision, which requires a materially adverse action.")). So too does the City rely on cases analyzing Title VII claims. *See* City Memo. Dismiss at 11 (citing *Martinez v. Nw. Univ.*, 173 F. Supp. 3d 777, 788 (N.D. Ill. Mar. 29, 2016)).

58. These allegations plausibly constitute adverse employment actions. *See Barton*, 662 F.3d at 453–54; *Muldrow*, 601 U.S. at 355.

### 2. Internal Complaints

Next, Defendants contend that Stieglitz fails to plead an IWA retaliation claim because his complaints of workplace harassment and retaliation are not the type of violations the IWA was intended to protect. City. Memo. Dismiss at 12. The IWA, from Defendants' perspective, is designed to protect workers who report violations of state or federal laws, rules, or regulations because the reported wrongful conduct or unsafe conditions affect the health, safety and welfare of Illinois residents. *Id.* (citing *Larsen v. Provena Hosps.*, 27 N.E.3d 1033, 1043 (Ill. App. Ct. 2015)). Stieglitz's complaints, according to Defendants, fall short.

The IWA prohibits an employer from retaliating "against an employee for disclosing or threatening to disclose information to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety." 740 ILCS 174/15(b). Therefore, argues Stieglitz, a plaintiff need not allege that he complained about conditions involving conditions related to health, safety, or welfare of Illinois residents, but rather, he need only allege that he complained about what he *reasonably believed* to be violation of law, rule, or regulation. Resp. City at 8–9 (citing *Willms v. OSF Healthcare Sys.*, 984 N.E.2d 1194, 1196 (Ill. App. Ct. 2013)).

12

Stieglitz maintains that his complaints are the type of violations the IWA is intended to protect. Resp. City at 8–9. The Court agrees. Stieglitz alleges that he reasonably believed that Defendants' actions relating to sexual harassment that he reported were violations of City of Chicago policies, Title VII, the United States Constitution, as well as the criminal code. At this juncture, this is enough.

### 3. External Disclosures

Defendants also argue that Stieglitz has failed to allege a disclosure to an outside government agency as required by the IWA. City Memo. Dismiss at 12. There is no cause of action under the IWA, assert Defendants, where an employee reveals information only to his employer. *Id.* (citing, *inter alia*, *Huang v. Fluidmesh Networks, LLC*, 2017 WL 3034672, at *3 (N.D. Ill. July 18, 2017)). Stieglitz's complaints to the City's EEO Office and the OIG are merely internal complaints, posit Defendants, because Stieglitz "is employed by the City and the City consists of multiple departments which include but are not limited to CFD and the City's EEO Office and the OIG." *Id.*

Stieglitz retorts that the IWA requires only that a plaintiff report his complaints to a governmental agency, which he did by reporting to both the EEO and OIG. Resp. City at 10–11 (citing, *inter alia*, *Brame v. City of N. Chicago*, 955 N.E.2d 1269, 1271 (Ill. App. Ct. 2011); *Milsap v. City of Chicago*, 2018 WL 488270, at *9 (N.D. Ill. Jan. 19, 2018)). The Court agrees with the analyses in *Brame* and *Milsap* that the plain language of the IWA requires only that a plaintiff make a complaint to a

government or law enforcement agency, and it matters not that such agency may also be his employer. *Brame*, 955 N.E.2d at 1271–73; *Milsap*, 2018 WL 488270, at *7–9.

In reply, Defendants contend that such authority is inapposite because *Brame* and *Milsap* involved complaints of suspected criminal activity, unlike Stieglitz's complaints of sexual harassment and retaliation. R. 35, City Reply at 9. Defendants, however, do not explain how the analyses in *Brame* and *Milsap* regarding the plain language of the statute apply only to reports of criminal activity, rather than any complaint sufficient under the IWA, and therefore have waived the argument. *See, e.g.*, *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."). And, for the reasons discussed above, the Court finds that, at this stage, Stieglitz's complaints of sexual harassment and retaliation are sufficient under the IWA. *See supra* Section I.B.2–3. In short, the Court finds Stieglitz sufficiently pled that he reported his complaints to a governmental agency as required under the IWA.

### 4. Causal Connection

Andersen (but not the City and McDermott) argues that Stieglitz fails to plausibly allege a causal connection between his protected activities and retaliation by Andersen. R. 16, Andersen Memo. Dismiss at 6–8. According to Andersen, Stieglitz fails to allege that Andersen knew that Stieglitz complained about sexual harassment to the City's EEO or OIG, and therefore fails to adequately plead a causal link between his complaints and Andersen's alleged adverse actions. *Id.* at 7 (citing

14

*Jackson v. United Parcel Serv., Inc.*, 337 Fed. App'x 569, 571 (7th Cir. 2009)). And, argues Andersen, Stieglitz cannot plausibly allege causation based on timing alone, because the temporal gap between Stieglitz's complaint to EEO in July 2021 and Andersen's alleged initiation of an investigation into Stieglitz in February 2022, let alone later alleged retaliatory conduct, is too long. *Id.* at 7–8 (citing, *inter alia*, *Wheeler v. Piazza*, 2018 WL 835353, at *4 (N.D. Ill. Feb. 13, 2018)).

Predictably, Stieglitz disagrees, arguing that he has done enough at the pleading stage to allege that he suffered adverse acts because of the complaint he filed. Resp. Anderson at 4 (citing, *inter alia*, *Renken v. Illinois State Toll Highway Auth.*, 2023 WL 4625520, at *4 (N.D. Ill. July 19, 2023)). From Stieglitz's perspective, because he alleges an ongoing pattern of harassment, there is not too much of a temporal gap between his complaints and retaliation by Andersen. *Id.* (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014)). The Court agrees with Stieglitz.

In addition to alleging that Andersen brought false allegations about Stieglitz in February 2022 and made statements to the Chicago Police Department that led to Stieglitz's arrest in June 2023, Stieglitz also alleges that, after he complained about sexual harassment, "he was ostracized by his coworkers, threatened with discipline for reporting illegal behavior, brought up on false internal review charges, the station cook spit on his plate at dinner, he had doors slammed in his face, and he was transferred from his assigned house." SAC ¶¶ 35, 39, 58. True, apart from the February 2022 and June 2023 examples, Stieglitz does not specify what actions

15

Andersen took part in as part of this campaign of retaliatory harassment, but at this stage, the Court finds it to be sufficient, if barely. *See, e.g.*, *Logan v. City of Chicago*, 2018 WL 5279304, at *6 (N.D. Ill. Oct. 24, 2018) (rejecting defendants' causation argument for dismissal of plaintiff's IWA claim, as plaintiff was "not required to prove causation at this point, but to allege it plausibly. If [plaintiff] is unable to show that Defendants had knowledge of his internal complaints, then perhaps he will lose on summary judgment. 'But the Court is not entitled to assume that other evidence of causation is lacking simply because it is not detailed in [plaintiff]'s complaint.'") (quoting *Bello v. Vill. of Skokie*, 2014 WL 4344391, at *8 (N.D. Ill. Sept. 2, 2014)).

Andersen argues in reply that Stieglitz "cannot cure his pleading deficiencies as to Andersen by improperly combining his allegations against Andersen with unrelated allegations against other CFD employees, however." R. 34, Andersen Reply at 7–8 (citing *Harris*, 479 F. Supp. 3d at 749). True, at times, group pleading may be improper, but here, Stieglitz, if barely, does enough to put Andersen on notice of his involvement in a pattern of harassment following Stieglitz's complaints. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024). If Stieglitz cannot show that Andersen was personally involved in any harassment until February 2022, then it is possible he will lose at summary judgment.

### C. Tort Immunity Act

Defendants next argue that the Court should dismiss Count IV because Defendants are entitled to absolute immunity under the Illinois Tort Immunity Act (the TIA), 745 ILCS 10/2-201; *id.* 10/2-109.

16

The TIA provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. "Section 2-201 of the TIA has two prongs. First, a public employee must hold either a position involving the determination of policy or a position involving the exercise of discretion. Second, the public employee's act or omission giving rise to litigation must be both a determination of policy and an exercise of discretion." *Consolino v. Dart*, 2019 WL 4450498, at *9 (N.D. Ill. Sept. 17, 2019) (cleaned up). "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995). The TIA is an affirmative defense. *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014).

Defendants contend that the TIA confers immunity on McDermott and Andersen, and thus the City, because the alleged retaliatory conduct involved discretionary acts undertaken in the scope of their official duties. City Memo. Dismiss at 13 (citing 745 ILCS 10/2-201, 2-109); Andersen Memo. Dismiss at 10–12. Defendants maintain that under Section 2-201, public employees are not liable for injuries resulting from discretionary or policy determinations, even if those determinations are abused, and that Section 2-109 correspondingly immunizes the

17

City if its employees are not liable. City Memo. Dismiss at 13–14; Andersen Memo. Dismiss at 12.

Stieglitz counters that the motions should be denied for two reasons. First, similar to his argument regarding preemption, Stieglitz contends that invocation of the TIA is procedurally improper under Rule 12(b)(6) because immunity under the TIA is an affirmative defense that should be asserted in an answer and addressed via a Rule 12(c) motion. Resp. City at 11 (citing *Williams*, 2022 WL 3716214, at *6). Neither the City, McDermott, nor Andersen substantively address this procedural objection but instead reiterate that the allegations on their face establish discretionary conduct for which they are immune under Sections 2-201 and 2-109. City Reply at 9–10; Andersen Reply at 12. Defendants, therefore, waive any response. *See In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived.").

True, Andersen cites two cases in which a district court dismissed IWA claims based on the TIA. R. 34, Andersen Reply at 9–10 (citing *Thompson v. Bd. of Educ. of City of Chicago*, 2014 WL 1322958, at *7 (N.D. Ill. Apr. 2, 2014); *Consolino*, 2019 WL 4450498, at *9). Neither of those cases, however, address the fact that the TIA is an affirmative defense. The Court cannot ignore the fact that Stieglitz has raised that argument here.

Similar to the affirmative defense of preemption, because the TIA is an affirmative defense, plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint. *Sterling v. Bd. of Educ. of Evanston Twp. High Sch. Dist.*

*202*, 2021 WL 809763, at \*7 (N.D. Ill. Mar. 3, 2021); *see also Tyson v. Cook Cnty.*, 539 F. Supp. 3d 924, 928 (N.D. Ill. 2021). It is premature for the Court to determine whether Defendants have met their burden on this affirmative defense. Putting that aside, Defendants' argument that their alleged conduct was discretionary invites the Court to construe the allegations in a light more favorable to Defendants than to Stieglitz, which is improper at this stage. Defendants may ultimately be able to show that they are immune from liability because their conduct was discretionary rather than ministerial. Today, however, is not that day.

### D. Individual Liability under the IWA

Defendants next contend that the claims in Count IV should be dismissed against McDermott and Andersen because the IWA does not impose individual liability. City Memo. Dismiss at 14[9]; Andersen Memo. Dismiss at 4–5. Stieglitz retorts that the plain text of the IWA authorizes suits against individuals. R. 27, Resp. Andersen at 2.

As Andersen acknowledges in reply, courts within this District are split as to "whether a plaintiff may state a claim against individuals [under the IWA]." Andersen Reply at 3 (quoting *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 884 (N.D. Ill. 2019) (collecting cases)). Upon review of the conflicting authority cited by Andersen and Stieglitz, the Court agrees with the reasoning of the courts finding that the IWA does provide for liability against individuals. As Stieglitz points out, and as other courts in this District have recognized, the plain language of the IWA specifically

---

[9]The City and McDermott incorporate Andersen's arguments relating to individual liability under the IWA. City Memo. Dismiss at 14.

includes an "individual" within the definition of "employer." Resp. Andersen at 2 (quoting 740 ILCS 174/5); *Bello*, 2014 WL 4344391, at *9; *see also Principe v. Vill. of Melrose Park*, 2020 WL 4815908, at *6 (N.D. Ill. Aug. 18, 2020) (same). And, importantly, the statute includes in the definition of employer "any person acting . . . on behalf of [an entity] in dealing with its employees.'" 740 ILCS 174/5. As the court in *Bello* states, "the statute makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's 'employer' may likewise be considered 'employers' potentially liable for violating the statute." 2014 WL 4344391, at *9.

For the first time in reply, Andersen argues that Stieglitz fails to allege that Andersen interacted with Stieglitz on behalf of the CFD, his employer. Andersen Reply at 3–4. "[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). McDermott makes no substantive argument about lack of individual liability under the IWA, and thus has also waived the argument. *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (cleaned up).

The Court therefore declines to dismiss Stieglitz's IWA claim against McDermott and Andersen on this basis.

### E. Statute of Limitations

With the last arrow in their quiver as to Count IV, Defendants argue that because Stieglitz filed his lawsuit on April 28, 2023, any and all allegations occurring before April 28, 2022 are time-barred under Section 2-201 of the TIA's one-year statute of limitations. City Memo. Dismiss at 14[10]; Andersen Memo. Dismiss at 6. Stieglitz responds that "he has been enduring a series of retaliatory actions and continuous harassment" and therefore the continuing violation theory applies. Resp. Andersen at 3 (citing *Taylor v. Bd. of Educ. of City of Chicago*, 10 N.E.3d 383, 395 (Ill. App. Ct. 2014)). The continuing violation doctrine applies when "a tort involves a continued repeated injury" and "the limitation period does not begin until the date of the last injury or when the tortious act ceased." *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005) (cleaned up). Andersen retorts in reply that the continuing violation doctrine does not apply where, as here, the plaintiff alleges merely "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." Andersen Reply at 5 (quoting *Rodrigue*, 406 F.3d at 443).

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)). As stated above, because affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations

---

[10]The City and McDermott again incorporate Andersen's arguments in support of dismissal.

of the complaint unambiguously establish all the elements of the defense. *Hyson USA, Inc., v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

The Court finds that the allegations of retaliation, including Stieglitz's allegations that, after he "complained about sexual harassment, he was ostracized by his coworkers, threatened with discipline for reporting illegal behavior, brought up on false internal review charges, the station cook spit on his plate at dinner, he had doors slammed in his face, and he was transferred from his assigned house," SAC ¶ 35, are similar to those alleged in *Taylor*, and which the Illinois appellate court found to constitute a continuing violation, *Taylor*, 10 N.E.3d at 395 (continuing violation in IWA case where plaintiff was "subjected to a continuous pattern of petty harassment by the Board in direct retaliation for that report" of suspected abuse, including that "his performance rating was lowered, he was demoted, and his integrity questioned in the context of his report of retaliation; he was made to undergo humiliation in front of his peers and subjected to repeated, questionable disciplinary censure and suspension with little or no opportunity to respond, culminating in the nonrenewal of his contract."). At this stage, the Court cannot say that Stieglitz has pleaded himself out of court, so the motions to dismiss based on the statute of limitations are denied.

For the foregoing reasons, Stieglitz's IWA claim survives the motions to dismiss.

## II.    Violations of the Equal Protection Clause (Count III)

22

Stieglitz brings Count III under 42 U.S.C. § 1983, alleging that the individual Defendants intentionally subjected him to unequal and discriminatory treatment that altered the terms and conditions of his employment in violation of the Fourteenth Amendment. SAC ¶¶ 98–99. As for the City, Stieglitz alleges that it is liable because, in violation of the Fourteenth Amendment, it adopted and promulgated an official policy that violated his equal protection right to be free from sexual harassment and/or created a widespread practice or custom of violating employee's rights to be free from sexual harassment, and/or the decisions to violate employee's equal protection rights to be free from sexual harassment was made by an official with final policy making authority. *Id.* ¶ 100.

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of LaCross*, 595 F.3d 691, 695 (7th Cir. 2010).

Defendants move to dismiss this claim on the basis that: (a) allegations before April 28, 2021 are time-barred under the statute of limitations, (b) the conduct alleged does not rise to the level of a constitutional deprivation, (c) the Equal Protection Clause does not support a retaliation claim, and (d) Stieglitz fails to allege personal involvement by the individual Defendants. City Memo. Dismiss at 15–17; Andersen Memo. Dismiss at 13–14. The Court addresses each argument in turn.

**A. Statute of Limitations**

Because Section 1983 does not include its own statute of limitations, it borrows the forum state's statute of limitations for personal injury actions, which in Illinois is two years. *See Wallace v Kato*, 549 U.S. 384, 387 (2007). Therefore, Stieglitz's Equal Protection claim under Section 1983 is subject to a two-year statute of limitations. *Hollingsworth v. Mennella*, 2024 WL 3495011, at *7 (N.D. Ill. July 19, 2024). Defendants contend that because Stieglitz filed suit on April 28, 2023, any discrete acts occurring before April 28, 2021 are presumptively time-barred. City Memo. Dismiss at 15. Stieglitz counters that Defendants' statute of limitations argument is improper because a Rule 12(b)(6) motion is not the appropriate vehicle to raise an affirmative defense. Resp. City at 14. Additionally, he contends that, because he "alleges hostile work environment sexual harassment, which is one unlawful employment practice composed of a series of separate acts," he pleads a continuing violation, which allows him to "reach back to the beginning of the series of events even if that beginning lies outside the statutory limitations period." *Id.* at 15 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Heard v. Sheahan*, 253 F.3d 316, 319–320 (7th Cir. 2001)); *see also Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015) (the "very nature [of hostile work environment claims] involves repeated conduct. . . . As such, a . . . claim for hostile work environment is timely as long as any act falls within the statutory time period, even if the [claim] encompasses events occurring prior to the statutory time period.") (cleaned up). Defendants contend that Stieglitz fails to plead a continuing violation, as he pleads only isolated incidents. City Reply at 12.

24

As already discussed, the statute of limitations is an affirmative defense, and "plaintiffs need not anticipate and attempt to plead around all potential defenses," including untimeliness. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). For the same reasons stated above, *see supra* Section II.E, the Court finds that, at this stage, Stieglitz has sufficiently pled a continuing violation. Defendants are free to argue at summary judgment that any alleged harassment before April 28, 2021 is an isolated incident that the Court cannot consider.

## B. Sufficiency of Allegations

Defendants next argue, based on their contention that any allegations before April 28, 2021 are barred by the statute of limitations, that the remaining allegations fail to rise to the level of severe or pervasive conduct such that a reasonable person would find it abusive. City Memo. Dismiss at 16. The way Defendants see it, the allegations merely consist of "isolated incidents where he claims to have seen a nude photo of an unidentified male firefighter on a shower curtain of another firehouse in October of 2022 and playboy magazines." *Id.* The other allegation, from Defendants' perspective, that he found a sex toy in the shape of a penis on top of his locker when he arrived as work," fares no better. *Id.*

Stieglitz counters that he experienced more than isolated sexual banter or trivial incidents. Resp. City at 14. The Court agrees. He alleges that CFD personnel repeatedly circulated graphic sexual content via a group chat, made derogatory comments about others' perceived sexual orientation, subjected him to lewd workplace commentary, threatened him, and orchestrated retaliatory discipline and

arrest. SAC ¶¶ 19–39, 50–52, 55–59. Courts have long recognized that sex-based harassment in the workplace, when sufficiently severe or pervasive, can constitute an Equal Protection violation. Resp. City at 15–16 (citing *Doe v. Bd. Of Educ. of City of Chi.*, 2020 WL 1445638, at *6–7 (N.D. Ill Mar. 24, 2020); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

Viewed in the light most favorable to Stieglitz, these allegations plausibly establish a work environment that was "sufficiently severe or pervasive to alter the conditions of [his] employment." *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015).

## C. Retaliation Claims Under the Equal Protection Clause

In Count III, Stieglitz repeats and realleges the prior paragraphs of his complaint. SAC ¶ 97. From Defendants' point of view, this includes his count for Title VII Retaliation. City Memo. Dismiss at 17. Defendants argue that Stieglitz cannot assert a retaliation claim under the Equal Protection Clause because it is not independently cognizable and instead must be brought under Title VII or the First Amendment. *Id.* (citing *Schloss v. City of Chi.*, 2019 WL 6716613, at *10–11 (N.D. Ill. Dec. 10, 2019) (quoting *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004)). Stieglitz retorts that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination," and therefore his equal protection claim may encompass acts that may be considered retaliation. Resp. City at 15 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("Retaliation against a person because that person has complained of

26

sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.")).

In order to assert an equal protection, claim, Stieglitz must show that Defendants intentionally discriminated against him because of his membership in a particular class. *Gray v. Locke*, 885 F.2d 399, 414 (7th Cir. 1989). True, Stieglitz alleges that he was harassed and retaliated against because he complained about sexual harassment, but these allegations do not show that Stieglitz retaliated against because he is a member of a particular class. *Id*. The Seventh Circuit explained in *Boyd* that "retaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on the grounds of sex . . . [and] Congress would not have wanted a Title VII plaintiff to bypass the elaborate administrative procedures created by the statute (procedures as applicable to retaliation claims as to any other claims under Title VII), and go directly to court, through the illogical expedient of equating discrimination against a person for filing charges of sex discrimination to sex discrimination itself." *Boyd*, 384 F.3d at 898 (cleaned up). Therefore, Stieglitz's right to be free for protesting sexual harassment "is a right created by Title VII, not the equal protection clause." *Gray*, 885 F.2d at 414.

Therefore, to the extent Stieglitz claims retaliation for reporting or complaining of sexual harassment under the Equal Protection Clause, that claim is dismissed with prejudice. To the extent that Stieglitz claims that Defendants took actions against him based on his sex, such claims are properly brought under the Equal Protection Clause.

### D. Individual Liability

Lastly, Defendants contend that Stieglitz fails to allege sufficient personal involvement by McDermott and Andersen. City Memo. Dismiss at 17; Andersen Memo. Dismiss at 13–14. Individual liability, assert Defendants, requires a defendant's personal involvement in the alleged constitutional violation. City Memo. Dismiss at 17 (citing *Stevens v. Shelton*, 2019 WL 1239784, at *9 (N.D. Ill. Mar. 18, 2019)). To state a claim for a constitutional violation under Section 1983, a plaintiff must "show that the defendants were personally responsible for the deprivation of their rights. A defendant is personally responsible if the conduct causing the constitutional deprivation occurs at his direction *or with his knowledge and consent.*" *Wilson v. Warren Cnty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016) (emphasis added).

Here, viewing the allegations of the Second Amended Complaint in the light most favorable to Stieglitz, as the Court must at this juncture, the Court finds that Stieglitz has pled just enough to plausibly allege individual liability. Stieglitz alleges that McDermott allegedly ignored multiple complaints, made sexual jokes, threatened to leave Stieglitz in the line of duty, and personally contacted law enforcement to initiate a false investigation. SAC ¶¶ 32–33, 37–38, 49, 51, 58. As for Andersen, Stieglitz alleges that he actively participated in the group chat distributing explicit content, ignored Stieglitz's requests, laughed when another firefighter threatened Stieglitz; and contributed to a false narrative culminating in Stieglitz's arrest. SAC ¶¶ 21–30, 39, 50, 57–58. This is consistent with cases recognizing that a supervisor's deliberate failure to stop known harassment can itself constitute

personal involvement. Resp. City at 16 (citing *Flaherty v. Marchand*, 2001 WL 1242884, at *3–4 (N.D. Ill. Oct. 17, 2001); *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1189 (7th Cir. 1986)); *see also Bohen*, 799 F.2d at 1190 (J. Posner, concurring) ("a deliberate refusal to respond to complaints of harassment" is actionable under the Equal Protection Clause).

Further, Defendants attempt to downplay the significance of their conduct as trivial or non-harassing. However, this mischaracterizes the totality of the allegations, which involve repeated exposure to sexually explicit material, verbal abuse, and workplace ostracization. As stated before, courts have held that personal participation includes not only direct involvement in harassment but also deliberate indifference to its occurrence. *See, e.g.*, *J.H. v. Sch. Town of Munster*, 160 F. Supp. 3d 1079, 1086 (N.D. Ind. 2016) (citing *Bohen*, 799 F.2d at 1190).

Therefore, as discussed above, the Court finds that Stieglitz has adequately alleged personal involvement by McDermott and Andersen. Except as addressed above, the motions to dismiss Count III are denied as to both individual Defendants and the City.

## III. Title VII Retaliation (Count II)

In Count II, Stieglitz asserts a retaliation claim under Title VII against the City. According to Stieglitz, the City has "engaged in a policy, pattern, and practice of retaliating against employees who complain of sexual harassment." SAC ¶ 94.

To state a Title VII retaliation claim, "a plaintiff must allege that [he] engaged in statutorily protected activity and was subjected to adverse employment action as

29

a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). Protected activity includes "some step in opposition to a form of discrimination that [Title VII] prohibits." *Ferrill v. Oak Creek–Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (cleaned up).

Defendants move to dismiss Count II on three grounds: (1) Stieglitz failed to allege an adverse employment action, (2) certain allegations are untimely, and (3) various allegations exceed the scope of his EEOC charges.

### A. Adverse Employment Action

Defendants first contend that Stieglitz has not adequately pleaded an adverse employment action for purposes of a Title VII retaliation claim. City Memo. Dismiss at 17–18. Defendants maintain that Stieglitz's allegations do not rise to the level of materially adverse conduct that would dissuade a reasonable employee from engaging in a protected activity. *Id.* As previously discussed, *see supra* Section I.B.1, the Court finds that Stieglitz has sufficiently alleged a materially adverse action by alleging that he was ostracized by coworkers, threatened for reporting misconduct, subjected to internal investigations, and transferred from his assigned firehouse. Drawing all reasonable inferences in Stieglitz's favor, these allegations plausibly describe that he engaged in statutorily protected activity and was subjected to an adverse employment action as a result. *See Carlson*, 758 F.3d at 828.

### B. Timeliness and Scope of EEOC Charges

Next, Defendants argue that Stieglitz's retaliation claims occurring before November 3, 2021 are time-barred because his Amended EEOC Charge alleging

30

retaliation was filed on August 30, 2022 (August 30, 2022 Charge). Memo. Dismiss at 18. Before filing a Title VII claim, a plaintiff must first file an administrative charge with the EEOC within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). A plaintiff "must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). "The primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances." *Huri*, 804 F.3d at 831. While exhaustion of administrative remedies is neither a jurisdictional prerequisite nor an element of a Title VII claim, it is a condition precedent to bringing suit. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). After doing so, a plaintiff generally may not pursue a Title VII claim in court that was not included in his or her EEOC charge.

However, "if certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (cleaned up). At a minimum, the claim and the administrative charge must "describe the same conduct and implicate the same individuals." *Huri*, 804 F.3d at 831–32. "Courts review the scope of an EEOC charge liberally." *Id.* at 831 (cleaned up).

Defendants first assert that any alleged retaliatory acts occurring more than 300 days prior to November 3, 2021–including the allegations that Stieglitz was

31

ostracized by his co-workers, threatened with discipline for reporting illegal behavior, and brought up on false internal review charges, *see* SAC ¶ 35—are untimely and must be dismissed. Stieglitz retorts that Defendants "misstate" his allegation. Resp. City at 18. According to Stieglitz, the allegations in this paragraph were of causation, not timing, and therefore the retaliation that he experienced was not limited to "right after" July 29, 2021 and therefore are timely. *Id.* Given that the Court must liberally view an EEOC claim, for now, the Court finds these allegations, which are not limited to a specific timeframe, to be within the scope of Stieglitz's EEOC charge.

Defendants also point out that Stieglitz's August 30, 2022 Charge listed the latest instance of retaliation as June 29, 2022, and therefore argue that any instance of retaliation which occurred after that date is beyond the scope of his August 30, 2022 Charge and must be dismissed for failure to exhaust administrative remedies. City Memo. Dismiss at 19 (citing *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019)). As stated above, since the parties fully briefed the City's motion to dismiss, the Court granted Stieglitz leave to file his Second Amended Complaint. R. 43. The Second Amended Complaint alleges that Stieglitz filed another EEOC charge on March 16, 2024, alleging retaliation. SAC ¶ 16. Although the Second Amended Complaint did not attach the March 16, 2024 EEOC Charge, for purposes of addressing the motion, the Court finds it reasonable to infer that it encompasses the instances of retaliation alleged in the SAC; as stated above, any retaliatory acts occurring 300 days before—meaning May 21, 2023—are timely under that Charge. Therefore, the Court limits its analysis as to whether allegations of retaliation

32

between June 29, 2022 (the listed end date on Stieglitz's August 30, 2022 Charge) and May 21, 2023 (300 days before his March 16, 2024 Charge) are properly exhausted.

In response, Stieglitz states that in the Seventh Circuit, a plaintiff is not required to file a new EEOC charge to pursue retaliation claims arising from the filing of a prior EEOC charge. Resp. City at 17–18 (*citing Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013)). Defendants correctly posit in reply, however, that this rule applies to claims of retaliation based on the filing of the initial *EEOC* Charge, not for retaliation based on later *internal complaints*, like those Stieglitz alleges. City Reply at 14–15 (citing *Rufus v. City of Chicago*, 2018 WL 1911799, at *4 (N.D. Ill. Apr. 23, 2018)). Additionally, Stieglitz maintains that the retaliatory conduct was continuing and occurred up to the filing of his First Amended Complaint. Resp. City at 18.

Although a close call, the Court finds that the allegations of retaliation that occurred between June 29, 2022 and May 21, 2023, at least as currently alleged in the Second Amended Complaint, fall within a pattern of harassment and unjustified discipline related to the retaliation complained of in Stieglitz's August 30, 2022 Charge. *See Little v. Illinois Dep't of Pub. Health*, 2017 WL 5903835, at *4 (N.D. Ill. Nov. 30, 2017) (finding undated actions, such as a two-day suspension and the plaintiff's supervisor giving away her duties to younger, less experienced interns, "arose out of the pattern of harassment and unjustified discipline she complained of in her EEOC charge and in the rest of her Complaint") (citing *Huri*, 804 F.3d at 831–

32; *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 983 (N.D. Ill. 2014) (allegations of retaliation that post-date the plaintiff's EEOC charge were exhausted because they are part of the same "campaign" of retaliatory harassment)). To the extent that discovery uncovers that different individuals perpetuated the harassment or retaliation, the Court may find those allegations not to be exhausted at a later stage of the proceedings.

Accordingly, the Court finds that Stieglitz has exhausted his retaliation claims, and adequately states a claim for retaliation under Title VII.

## IV.    Title VII Hostile Work Environment (Sexual Harassment) (Count I)

Stieglitz brings Count I against the City, alleging that he was subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). To state a hostile work environment claim, a plaintiff must allege that: (1) he was subject to unwelcome harassment, (2) the harassment was based on his membership in a protected class, (3) the harassment was severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) a basis exists for employer liability. *Huri,* 804 F.3d at 834.

Defendants move to dismiss Count I on three bases: (1) Stieglitz's allegations predating April 18, 2021, are untimely and not a continuing violation (2) Stieglitz exceeded the scope of his February 11, 2022 Charge and August 30, 2022 Charge, and (3) Stieglitz's allegations are neither severe nor pervasive to impute liability against the City. City Memo. Dismiss at 20–21.

34

### A. Scope of the EEOC Charge

Defendants assert that Stieglitz's allegations exceed the scope of both his February 11, 2022 Charge and August 30, 2022 Charge and are, in part, untimely. City Memo. Dismiss at 20–21. Defendants point out that the EEOC Charge filed on February 11, 2022 (February 11, 2022 Charge), identified April 18, 2021 as both the earliest and latest date of discrimination. The August 30, 2022 Charge likewise specified April 18, 2021, as the earliest date and June 29, 2022 as the latest. Defendants rely on *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994), to contend that any alleged conduct occurring before April 18, 2021, or after June 29, 2022–including allegations concerning a shower curtain and sex toy–fall outside the scope of the EEOC charges and must be dismissed. Memo. Dismiss at 20–21.

Stieglitz responds that a hostile work environment may encompass conduct occurring outside the formal filing period if at least one act contributing to the hostile environment occurred within the 300-day window; thus, the entire period of the hostile work environment may be considered. Resp. City at 20 (citing *Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570, 575–76 (N.D. Ill. 2020)). Stieglitz further points out that EEOC charges are not expected to include every factual detail and should be construed liberally. *Id.* at 19 *(*citing *McKenzie*, 92 F.3d at 482). He also cites *Cheek*, 31 F.3d at 502, to emphasize that "allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Id.* Similarly, *LaPorta v. City of Chi.*, 1999 WL 965970 at *5 (N.D. Ill. Sept. 29, 1999) and *Macchia v Loy. Univ. Med. Ctr.*, 2004 WL 2392201,

at *5 (N.D. Ill. Oct. 25, 2004) support the view that ambiguities in the charge do not justify dismissal where the allegations are reasonably related to the charge.

The Court agrees that Stieglitz's allegations fall within the scope of the EEOC Charge. The Second Amended Complaint describes a series of related acts, many of which occurred within the applicable time period listed on the Charges, that collectively contributed to the allegedly hostile work environment. At the pleading stage, these allegations are sufficient to support an inference that the earlier and later incidents form part of the same unlawful workplace conduct. Moreover, construing the EEOC charges liberally, the Court concludes that the allegations in the Second Amended Complaint are reasonably related to the administrative charges and would have been expected to fall within the scope of the EEOC's investigation. As with the retaliation charge, if discovery uncovers that certain acts of discrimination were taken by different individuals and are not part of the same pattern, the Court may decline to consider them at a later stage. Therefore, the Court finds that, at this stage, Stieglitz has properly exhausted the allegations supporting his hostile work environment claim.[11] Finally, as discussed above, *see supra* Section II.B, he has sufficiently pled severe and pervasive harassment to support the claim.

## Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss [15], [17] are granted in part and denied in part. They are denied in all respects except that the

---

[11]Because the Court finds that Stieglitz has properly exhausted his administrative remedies as to Counts I and II, the Court need not determine whether it can consider Exhibit 1 to Stieglitz's response.

Court dismisses with prejudice any claim for retaliation based on complaints of harassment brought under the Equal Protection Clause. The Court directs Defendants to answer the Second Amended Complaint (including Counts V and VI) on or before August 14, 2025.

Date: July 23, 2025

_____
United States District Judge
Franklin U. Valderrama